# IN THE COURT OF APPEALS OF IOWA

No. 15-1840
Filed November 23, 2016

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**STEVEN MICHAEL BECKER,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, J. David Coil, Judge.

Steven Michael Becker appeals the district court's denial of his motion to suppress following his conviction and sentence for possession of methamphetamine. **AFFIRMED.**

Chad D. Primmer of Chad Douglas Primmer, P.C., Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Aaron J. Rogers, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., Mullins, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, Senior Judge.**

Steven Michael Becker appeals the district court's denial of his motion to suppress, following his conviction and sentence for possession of methamphetamine.  We affirm.

## I.        Background Facts and Proceedings

In December 2014 in the early morning, Officer Albert Bovy of the Waterloo Police Department was on patrol with his trained narcotics dog in an area that had recently been subject to multiple burglaries.  Officer Bovy observed a woman with a backpack run toward and enter a running vehicle parked in the parking lot of a closed business.  Becker was in the driver's seat of the vehicle.  Officer Bovy approached the car and made contact with its occupants.  The occupants gave inconsistent stories about where they were from—Becker saying he lived in Dysart and the female occupant saying they lived together in Cedar Falls.  The female occupant stated she was visiting a friend who lived across the street, but she was unable to identify in which house the friend lived.  Officer Bovy obtained the occupants' identification and ran them through the police records system; this search disclosed that both parties had prior arrests for narcotics.

Officer Bovy asked to search the vehicle; Becker consented.  Officer Bovy had Becker exit the car, and Becker went to a deputy who had since arrived.  Officer Bovy went around to the passenger seat and asked the female occupant if he could search her backpack.  She denied Officer Bovy's request.

Because of the conflict between her refusal and Becker's consent, Officer Bovy decided to take his trained dog around the car instead of manually

searching the vehicle. The dash cam video from Officer Bovy's car recorded Officer Bovy asking Becker, "Sir, she doesn't want me to check her bag, so I'm just going to run the dog around the vehicle. Okay?" Becker did not revoke consent. While walking around the car, the dog alerted on the passenger's side of the vehicle. The dog alerted again when searching the interior of the car after sniffing the console, gear shift, and radio controls. Officer Bovy then searched the vehicle by hand and found no narcotics. Officer Bovy then performed a more thorough search of Becker's person and found two small plastic bags of methamphetamine.

In March 2015, Becker filed a motion to suppress. Following a hearing, the district court denied the motion. On September 11, 2015, a bench trial was held, after which Becker was found guilty. Becker appeals.

## II.      Standard and Scope of Review

"We review the district court's denial of a motion to suppress based on the deprivation of a constitutional right de novo." *In re Pardee*, 872 N.W.2d 384, 390 (Iowa 2015). We "make 'an independent evaluation of the totality of the circumstances as shown by the entire record.'" *Id.* (citation omitted). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *Id.* (citation omitted).

## III.      Analysis

On appeal, Becker argues "there was no reason to conduct the dog sniff" and "once the dog sniff was concluded, the intrusion into Becker's person was unwarranted."

Becker's claims are unpersuasive. First, the parties do not dispute that a dog sniff is not a search. *See State v. Bergmann*, 633 N.W.2d 328, 334 (Iowa 2001) ("[A] dog sniff that occurs outside a vehicle is not a search under the meaning of the Fourth Amendment."). Second, Becker consented to the search of his vehicle.[1] *See id.* at 338 (holding "a warrantless search can be justified" where the officer received "consent to search"). When Officer Bovy sought permission to use the trained dog because of the female occupant's refusal to have her bag searched, Becker did not revoke consent.[2] And there is no indication here that the use of the dog impermissibly prolonged the encounter. *See id.* at 335 ("[A]ll that we have required in Iowa is that the dog sniff be conducted within a reasonable amount of time from the initial, lawful stop and that the stop is not unduly prolonged without a sufficient basis."). Instead, rather than search by hand, Officer Bovy had his trained dog—which was already in his patrol car—sniff the exterior of the vehicle.[3] Only when the dog alerted did Officer Bovy have the dog sniff the interior of the car. When the dog alerted

---

[1] Becker does not challenge Officer Bovy's right to request a search or allege that his consent was coerced or otherwise invalid.

[2] Becker relies upon *Rodriguez v. United States*, 135 S. Ct. 1609, 1613 (2015), which is inapposite, as the individual in *Rodriguez* refused consent to search the vehicle with a dog, which was requested *after* the officer had resolved his reason for instituting the stop. Becker also relies upon *In re Pardee*, 872 N.W.2d 384 (Iowa 2015), which also does not support his claims on appeal. In *Pardee*, the Iowa Supreme Court found the officer's "detention of the vehicle occupants for approximately twenty-five minutes preceding the dog sniff was improper." 872 N.W.2d at 391. Here, there is no indication an impermissible amount of time passed between Officer Bovy approaching the already-stopped car, receiving consent to search the car, and then using his trained dog to sniff the vehicle. Also, in *Pardee*, the detained individual did not consent to a search. *Id.* at 388.

[3] The State argues Becker failed to preserve error on this claim, asserting "Nowhere below d[id] Becker argue that the dog sniff unreasonably extended the duration of the investigation without additional reasonable suspicion." We assume, without deciding, error was preserved.

again, Officer Bovy then perform a manual search of the car—a search Officer Bovy still had consent to execute.[4]

Further, we are not persuaded by Becker's contention that there was "no reason to conduct the dog sniff." *See id.* at 335-38 (applying a "reasonable suspicion" of wrongdoing standard in determining whether the police can prolong their detention of a person to perform a drug sniff or for any other reason that was not the purpose of the stop). Officer Bovy observed the woman with a backpack run to and enter a running vehicle parked in the parking lot of a closed business in the early hours of the morning in an area recently plagued by burglaries. The occupants of the car then gave inconsistent stories and were unable to provide simple information supporting their stories. When Officer Bovy ran their information, both individuals had narcotics-related arrests. The occupants became increasingly nervous as the encounter continued. Officer Bovy received consent to search the car and only used the trained dog to perform a dog sniff when the woman refused consent to have her items searched.

Finally, Becker claims the search of his person following the dog sniff of the vehicle was unwarranted. Relying on *Bergmann*, the district court disagreed, reasoning:

> In this case Officer Bovy, after having his canine conduct a "dog sniff" of the vehicle, conducted a thorough hand search of the vehicle and did not find any controlled substances. It would be logical to presume under the facts in this case that there were controlled substances contained within the vehicle at one time and, if not found in the vehicle, that they were located on one of the two

---

[4] Becker's consent contrasts even the facts in *Bergmann*, where the detained individual refused to allow the officers to search his vehicle. 633 N.W.2d at 330.

occupants in the vehicle that just a short time earlier had gotten out of the vehicle.

The district court concluded Officer Bovy had probable cause to search Becker's person and that exigent circumstances existed. *See id.* at 338 (holding "a warrantless search can be justified" by "the presence of probable cause and exigent circumstances"). We agree. *See id.* ("Because the drug dog alert established probable cause, the police legally searched the car without a warrant under the probable cause plus exigent circumstances exception to the warrant requirement."); *see also State v. Merrill*, 538 N.W.2d 300, 301-02 (Iowa 1995) (per curiam) (extending the previous holding "that the smell of burning marijuana from a car may give a police officer probable cause to search a vehicle" to also allow for the search of a person in a vehicle where the smell was coupled with defendant's "furtive attempts to hide something").[5]

**AFFIRMED.**

---

[5] Becker does not specifically challenge the exigent-circumstances element. *See generally State v. Kern*, 831 N.W.2d 149, 174 (Iowa 2013) ("The exigent-circumstances exception includes a situation in which there is a 'probability that, unless immediately seized, evidence will be concealed or destroyed.' The exigent-circumstances exception is important to narcotics investigations because drugs are 'easily destroyed.'" (citations omitted)).